ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

OLIVER M. KIEFER (SBN 332830)
oliver.kiefer@us.dlapiper.com
ASHLEY BARTON (SBN 335673)
ashley.barton@us.dlapiper.com
MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

Attorneys for Defendant
HILTON WORLDWIDE HOLDINGS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VISHAL SHAH, JONATHAN GABRIELLI, and CHRISTINE Q. WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

HILTON WORLDWIDE HOLDINGS INC.,

Defendant.

Case No. 5:25-cv-01018-EKL

**DEFENDANT HILTON WORLDWIDE HOLDINGS INC.'S STATEMENT OF RECENT DECISION IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Date: November 13, 2025
Time: 10:00 a.m.
Judge: Hon. Eumi K. Lee
Courtroom: Courtroom 7
San Jose Courthouse
280 South First Street, 4th Fl.
San Jose, CA 95113

Complaint Filed: January 31, 2025
Amended Complaint Filed: June 25, 2025

Pursuant to Civil Local Rule 7-3(d)(2), and in support of its Motion to Dismiss Plaintiffs' Amended Complaint ("Motion") (ECF 33), Defendant Hilton Worldwide Holdings Inc. ("Hilton Holdings") respectfully submits for the Court's review a recent decision from the Central District of California, which is relevant to the arguments raised in Section VI of Hilton Holdings' Motion and Section III of Hilton Holdings' Reply (ECF 39), and published after Hilton Holdings filed its Reply: *Moody v. Textron Inc.*, No. 2:25-cv-01032-MWC-E, 2025 WL 2828109 (C.D. Cal. Sept. 24, 2025). A copy of that decision is attached hereto as Exhibit A.

Dated: October 21, 2025

DLA PIPER LLP (US)

By: */s/ Isabelle Ord*

ISABELLE ORD
OLIVER M. KIEFER
ASHLEY BARTON
MATTHEW C. DANAHER

*Attorneys for Defendant*
*HILTON WORLDWIDE HOLDINGS INC.*

# EXHIBIT A

2025 WL 2828109
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Dino Moody
v.
Textron Inc. et al.

Case No. 2:25-cv-01032-MWC-E
|
Filed 09/24/2025

**Attorneys and Law Firms**

T. Jackson, Deputy Clerk, Attorneys Present for Plaintiffs: N/A

Not Reported, Court Reporter / Recorder, Attorneys Present for Defendants: N/A

**Proceedings: (IN CHAMBERS) Order GRANTING Defendant's Motion to Dismiss (Dkt. [31])**

The Honorable Michelle Williams Court, United States District Judge

***1** Before the Court is Textron Inc.'s ("Defendant") motion to dismiss ("Motion") Dino Moody's ("Plaintiff") Second Amended Complaint ("SAC"). *See* Dkt. # 31 ("*Mot.*"). Plaintiff filed an opposition ("Opposition"), *see* Dkt. # 32 ("*Opp.*"), and Defendant replied ("Reply"), *see* Dkt. # 33 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers, the Court **GRANTS** the Motion **WITH LEAVE TO AMEND**.

I. Background

A. Factual Background

This case arises out of Plaintiff's use of www.textron.com (the "Website"), which allegedly transmitted Plaintiff's data to third-party sources without his consent. *See generally* Dkt. # 30 ("*SAC*"). The SAC alleges as follows:

Defendant is an American company that produces advanced aviation, defense, and industry products. *Id.* ¶¶ 5, 8. Defendant owns, operates, and controls the website www.textron.com. *Id.* ¶ 5. The Website offers visitors access to information related to Defendant's global network of businesses, financial information, and career opportunities. *Id.* ¶ 8. Those career opportunities include job postings, of which there are 499 jobs available in the United States total and three in California. *Id.* ¶ 9. The Website includes a search bar that allows users to search for material on the Website that is relevant to their business-related needs, while revealing to various data and marketing companies the identity of visitors to the Website and the terms they searched for. *Id.* ¶ 11.

On August 12, 2024, Plaintiff visited the website while in California. *Id.* ¶ 23. Utilizing the Website's search bar, Plaintiff entered the query "Do employee benefits cover Diabetics like me?" *Id.* ¶ 13. Defendant embeds software into its website that allows third parties to view user's communications on the website, including the content of searches. *Id.* ¶ 10. As such, the Website transmitted Plaintiff's search to third-party advertising services—in this case, Syndicated Search and CSE (the "Data Companies"), both part of Google's advertising network. *Id.* ¶ 14.

Defendant transferred Plaintiff's data utilizing tracking technologies on the Website, technologies which issue automated "GET" requests to the Data Companies when Plaintiff submitted the search, but prior to the Website returning any results. *Id.* ¶¶ 18,

30. The data transmissions include sensitive identifiers, like unique device IDs and browser metadata, which allows the Data Companies to associate Plaintiff's query with existing user profiles and behavioral data. *Id.* ¶¶ 19–20, 29, 33. The transmissions also allow for storage of Plaintiff's data in an HTTP Archive ("HAR") file, which provides a detailed log of all network communications between Plaintiff's browser and web servers, including the identity, location, and manner of data transmission. *Id.* ¶ 26. As a result, Defendant knew from exactly which zip code Plaintiff was searching. *Id.* ¶¶ 35–36.

Defendant never informed Plaintiff that the Website would intercept and share his search activity, nor did Defendant provide Plaintiff an opportunity to consent or opt out of data sharing. *Id.* ¶¶ 22, 30, 37. Plaintiff never would have consented to this sharing, *id.* ¶ 37, and he had approached the Website expecting his interaction with it to stay between Plaintiff and Defendant, *id.* ¶ 31. Such data interception and sharing are not necessary for the Website to function, and the intercepted information allows Data Companies to compile comprehensive profiles of users like Plaintiff by tracking their interests and online behavior across multiple websites. *Id.* ¶ 33. Because of this tracking, Defendant knew that Plaintiff was searching from California as soon as Plaintiff visited the Website. *Id.* ¶ 35. Defendant's exposure of Plaintiff's data exposed Plaintiff's sensitive financial interests to commercial exploitation and potential misuse, *id.* ¶ 38, along with undermining his sense of privacy, *id.* ¶ 31. Plaintiff seeks classwide relief on behalf of himself and others similarly situated, including statutory and punitive damages, an order enjoining Defendant's conduct, and costs. *See generally id.*

B. Procedural Background

***2** On February 6, 2025, Plaintiff commenced this class action against Defendant. *See* Dkt. # 1. On April 7, 2025, Plaintiff filed his First Amended Complaint, *see* Dkt. # 22, which Defendant moved to dismiss, *see* Dkt. # 26. The Court granted Defendant's motion on the basis on Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction. *See* Dkt. # 29 ("*First Dismissal Order*"). On July 26, 2025, Plaintiff filed his SAC. *See SAC.* On August 8, 2025, Defendant filed the Motion arguing for dismissal under Rules 12(b)(2), 12(b)(6), and 41(b). [1] *See Mot.*

## II. Discussion

### A. Rule 12(b)(2)

*i. Legal Standard*

Under Rule 12(b)(2), "[w]hen a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). Where the motion is based on written material rather than on an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (when resolving a motion to dismiss under Rule 12(b)(2) based on written materials, courts accept uncontroverted facts in the complaint as true and resolve conflicts in affidavits in the plaintiff's favor). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, our inquiry centers on whether exercising jurisdiction comports with [constitutional] due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal quotation marks and citation omitted); *see* Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

***3** "Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.' " *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (quoting *Schwarzenegger*, 374 F.3d at 801). "Those contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there. Alternatively, a court may exercise

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

jurisdiction over 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The Supreme Court has referred to these different bases for personal jurisdiction as 'general' and 'specific' jurisdiction," respectively. *Id.* at 1106–07 (citing *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017)).

*ii. Analysis*

Because Plaintiff does not argue that Defendant is subject to general jurisdiction, the Court will analyze only whether the SAC adequately alleges a basis for specific jurisdiction. The Court finds that Plaintiff has failed to satisfy his jurisdictional burden and therefore grants Defendant's motion to dismiss pursuant to Rule 12(b)(2).

For a court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb*, 582 U.S. at 262. The Ninth Circuit "ha[s] established a three-part test for specific personal jurisdiction." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024). The three parts are:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* (citing *Schwarzenegger*, 374 F.3d at 802). "The plaintiff has the burden of proving the first two prongs." *Picot*, 780 F.3d at 1211 (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)). "If the plaintiff meets that burden, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017) (internal quotation marks and citation omitted).

As to the first prong, courts generally apply either a "purposeful availment" or "purposeful direction" test. *Glob. Commodities*, 972 F.3d at 1107. "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Id.* at 1107. Because privacy and data use violations are sound in tort, the Ninth Circuit often employs a purpose direction analysis and so will this Court. *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025).

"[T]he purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Id.* at 751 (citation omitted). This test, also known as the *Calder* effects test, is drawn from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).

***4** As before, Defendant's conduct satisfies the first prong of the *Calder* effects test. *See First Dismissal Order* 5. This prong requires an intentional act, defined as "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. "This standard focuses on the defendant's deliberate conduct, not the intent to cause harm, ensuring the act is purposeful and not incidental." *Hidalgo v. JPMorgan Chase Bank, N.A.*, No. 3:24-CV-02386-BEN-JLB, 2025 WL 1370488, at *2 (S.D. Cal. May 12, 2025). Defendant committed an intentional act by fulfilling the Data Companies' GET requests via the Website's embedded software. *See SAC* ¶¶ 10–22.

Though the SAC includes allegations that address much of what the Court previously identified as deficient, Plaintiff still cannot meet the second or third prongs of the *Calder* effects test. Plaintiff first highlights that the SAC includes new allegations as to Defendant's knowledge of Plaintiff's location. *Opp.* 9–10. The SAC alleges that Defendant can immediately bucket Website

visitors by state or city based on use of an IP address, *see SAC* ¶¶ 34–35, but Defendant argues that IP addresses do not provide location information, *see Mot.* 8. Defendant highlights that the SAC includes no allegation that Defendant "analyzes the IP address in any way to attempt to geolocate its website users," and notes that "[a]ll that is alleged is that [Defendant's] servers receive Plaintiff's IP address, which itself does not reveal anything about location." *Id.* But Defendant acknowledges that it could translate any IP address into a location, *see id.*, and the SAC highlights that "Defendant also bypasses any server-side IP masking ...," *SAC* ¶ 35. Drawing all reasonable inferences in Plaintiff's favor—as the Court must at this stage, *see Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204, 1216 (C.D. Cal. 2020)—the Court cannot rule that there is a lack of personal jurisdiction solely because the SAC did not detail every step of translating a proxy for location into an actual location.

Defendant also argues that even "assuming [Defendant] can identify that a website user is located in California the instant they visit the website, this does not establish that [Defendant's] act of fulfilling GET requests from Data Companies is undertaken with the knowledge that the GET request pertains to a search by a California resident ...." *Mot.* 7–8. To the extent that Defendant is arguing that it has not expressly aimed its activities at California because it operates nationwide and is thus agnostic as to the location where it is transmitting individuals' data, *Briskin* disposes of this argument. *See Briskin*, 135 F.4th at 758 (stating that "[w]e now take this opportunity to overrule [any cases] that require some sort of differential treatment of the forum state for a finding of 'express aiming' of the defendant's allegedly tortious conduct").

However, *Briskin* also held that "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are 'its own choice and not random, isolated, or fortuitous.' " *Id.* at 758 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). That is true "even if that platform cultivates a 'nationwide audience[ ] for commercial gain.' " *Id.* (quoting *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011)). The Ninth Circuit has held that "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Mavrix Photo*, 647 F.3d at 1229 (quoting *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). As to what constitutes "something more," this Circuit considers several factors, including "the interactivity of the defendant's website ...; the geographic scope of the defendant's commercial ambitions ...; and whether the defendant individually targeted a plaintiff known to be a forum resident ...." *Id.* (internal quotation marks and citations omitted).

***5** Here, the SAC alleges no reason for the contact between Plaintiff and Defendant other than Plaintiff's choice to utilize the website, lacking an allegation that it was Defendant's own choice that caused its contacts with California. This case is unlike others where courts have identified extensive marketing into the forum or other similar activity when finding specific jurisdiction. *See, e.g., Ford Motor Co.*, 592 U.S. at 368 ("An automaker regularly marketing a vehicle in a State, the Court said, has 'clear notice' that it will be subject to jurisdiction in the State's courts when the product malfunctions there ...." (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *Thomas v. Papa Johns Int'l*, No. 22cv2012 DMS (MSB), 2023 WL 6370641, at *4 (S.D. Cal. Aug. 14, 2023) (finding that defendant expressly aimed its conduct when "operating the interactive website www.papajohns.com, which allows users to browse local menus and place and pay for orders for take-out and/or delivery of food from Papa Johns' [130] brick and mortar stores located in California." (internal quotation marks and citations omitted)), *a'ffd*, 2025 WL 1704437 (9th Cir. 2025); *see also Rounds v. Case-Mate*, No. 2:24-cv-08531-WLH-RAO, 2025 WL 1873999, at *6 (C.D. Cal. July 2, 2025) (identifying that "Plaintiff only alleges that Defendant sells and ships its products to California residents," but "the mere sale and shipment of goods to California fails to suggest that Defendant's contacts with California are its *own* choice and not random, isolated, or fortuitous." (emphasis in original) (internal quotation marks and citations omitted)).

Moreover, aside from operating a nationally accessible website that includes a search bar and listing three California jobs out of its 499 postings, the SAC does not include any information that this Court would deem "something more" sufficient to constitute express targeting. *See Mavrix Photo*, 647 F.3d at 1229; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1018–19 (9th Cir. 2008) (finding that a single sale of a vehicle on eBay was insufficient by itself to support the exercise of personal jurisdiction over a nonresident seller); *Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999) ("It is well-established that sporadic purchases within a forum cannot support the assertion of personal jurisdiction unless the cause of action arises from or relates to those purchases" (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984));

*Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1046 (N.D. Cal. 2018) ("A 'mere web presence' or 'advertisements that incidentally may have made their way to [the forum state]' are insufficient to establish specific jurisdiction without more substantial evidence of contacts with the state." (citing *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007)). Nor is it clear how Defendant relied on California customers for commercial gain. *See Couto v. CorVell Enters. Comp.*, No. CV 24-144-M-DWM, 2025 WL 2158641, at *6 (D. Mont. July 30, 2025) (finding no purposeful direction, noting that plaintiffs had not alleged that "the Software is designed with a Montana-specific focus. In other words, just because the Software is compatible with various local markets does not mean that it is aimed at a specific local market, particularly when Mitchell does not exploit a customer base there for commercial gain." (internal quotation marks and citation omitted)); *contra Briskin*, 135 F.4th at 756 (highlighting that defendant "obtain[ed] valuable personal data about California consumers for its own commercial gain"). As such, the Court finds that the SAC does not sufficiently allege that Defendant expressly aimed its conduct toward California.

Even assuming *arguendo* that Plaintiff had shown that Defendant expressly aimed its conduct at the forum state, the SAC also falls short in alleging that Defendant's conduct causes harm that the Defendant knew Plaintiff would suffer in California. *See Briskin*, 135 F.4th at 751. The SAC notes that "each of the Data Companies collected additional identifying information such as unique user IDs, location data, cookies, and detailed device and browser data." *SAC* ¶ 29. It explains that "[t]his combination of personal details provides the company with the capability to identify Plaintiff, effectively de-anonymizing them, linking their searches to their identities, and enabling tracking of user behavior across other websites on the internet," which companies can then use "to market and advertise directly to Plaintiff in California." *Id.* These allegations rely on the acts not just of Defendant, but of the Data Companies, which cannot be the basis of personal jurisdiction. *See Theos Med. Sys., Inc. v. Nytone Med. Prods., Inc.*, No. 19-cv-01092-VKD, 2020 WL 500511, at *4 (N.D. Cal. Jan. 31, 2020) ("Personal jurisdiction cannot be established based on conduct of the plaintiff or of third parties within the forum state." (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)); *Dale Tiffany, Inc. v. Meyda Stained Glass, LLC*, No. 2:17-CV-00536-CAS(AGRx), 2017 WL 4417585, at *7 (C.D. Cal. Oct. 2, 2017) (finding no purposeful direction where plaintiff relied on activities of third-party sellers); *Tankovich v. Candela Med., Inc.*, No. 8:21-cv-01955-JWH-SHK, 2022 WL 17363909, at *3 (C.D. Cal. Oct. 24, 2022) (similar). Even though Defendant fulfills the Data Companies' GET requests, it is not clear that Defendant does anything further with Plaintiff's data. Without more, Plaintiff has not satisfied the third element of the purposeful direction test.

B. Rules 12(b)(6) and 41(b)

***6** The Court will not analyze the Defendant's motion to dismiss pursuant to Rule 12(b)(6) or 41(b) because the Court lacks personal jurisdiction over Defendant pursuant to Rule 12(b)(2). *See Guerrero v. Magnus Sports, LLC*, No. 2:24-CV-00526 WLH (MAAX), 2024 WL 5368649, at *6 (C.D. Cal. Nov. 12, 2024) (refraining from analyzing a 12(b)(6) motion after finding lack of personal jurisdiction over the defendants). However, to the extent that the parties have failed to comply with appropriate filing deadlines, the Court admonishes the parties of the seriousness of a failure to follow the Local Rules, and cautions both parties to fully comply with all local rules when conducting any additional activity in this District.

III. Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). Although the Court has already granted leave to amend once, it remains mindful that courts in this Circuit must apply leave to amend with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Because the Court does not find it obvious that granting leave to amend would be futile, the Court **GRANTS** leave to amend.

IV. Conclusion

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

For the foregoing reasons, the Court **GRANTS** Defendant's Motion and dismisses the SAC **WITH LEAVE TO AMEND**. Plaintiff must file any amended complaint no later than **October 17, 2025**. The September 26, 2025, hearing is **VACATED**.

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ

**All Citations**

Slip Copy, 2025 WL 2828109

## Footnotes

1 In its filings, Defendant asks the Court to take judicial notice of various documents, including Google's terms of service and an internet post from Google's search engine. A court may take judicial notice of any fact not subject to reasonable dispute because the fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Taking judicial notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1136 n.52 (C.D. Cal. 2014) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). But considering any document or item whose accuracy could be questioned would convert a motion to dismiss into a motion for summary judgment. *See Marcelos v. Dominguez*, No. C 08-00056 WHA, 2008 WL 2788173, at *3 n.2 (N.D. Cal. July 18, 2008) ("Countrywide and Argent also seek judicial notice of excerpts from various depositions. The accuracy of these deposition excerpts, which have never been before this Court, could be subject to reasonable dispute .... Judicial notice of such documents would effectively convert this motion to dismiss into a motion for summary judgment." (citing *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007)). The Court specifically identifies below the materials on which it relies, but notes generally that it will only consider documents whose accuracy cannot be questioned. Moreover, based on the current posture of these proceedings, the Court prioritizes the allegations in the SAC over external documents.

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.