IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SHAH, ET AL, | ) | CV-25-1018-EKL |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | NOVEMBER 21, 2025 |
| | ) | |
| HILTON WORLDWIDE HOLDINGS, INC., | ) | PAGES 1 - 28 |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

_____

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EUMI K. LEE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:        GUTRIDE SAFIER, LLP
                          100 PINE STREET, STE 1250
                          SAN FRANCISCO, CA 94111
                  BY:   **ANTHONY PATEK**


FOR THE DEFENDANT:        DLA PIPER, LLP
                          555 MISSION STREET, STE 2400
                          SAN FRANCISCO, CA 94105
                  BY:   **ISABELLE LOUISE ORD**




OFFICIAL COURT REPORTER:        SUMMER FISHER, CSR, CRR
                                CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

SAN JOSE, CALIFORNIA                    NOVEMBER 21, 2025

P R O C E E D I N G S

(COURT CONVENED AT 11:03 A.M.)

THE CLERK:  CALLING CASE NUMBER 5-25-CV-1018-EKL.  SHAH, ET AL. VERSUS HILTON WORLDWIDE HOLDINGS, INC. ON FOR A MOTIONS HEARING.

COUNSEL, PLEASE STATE YOUR APPEARANCES ON THE RECORD STARTING WITH COUNSEL FOR PLAINTIFF.

MR. PATEK:  THIS IS ANTHONY PATEK FROM GUTRIDE SAFIER APPEARING ON BEHALF OF PLAINTIFFS.

MS. ORD:  ISABEL ORD, O-R-D, ON BEHALF OF DEFENDANT, HILTON WORLDWIDE HOLDINGS.

THE COURT:  ALL RIGHT.  SO AS WE ARE -- OUR COURT REPORTER TODAY IS REMOTE, AS ARE WE GENERALLY, I'M IN THE COURTHOUSE, BUT YOU ALL ARE REMOTE, SO LET'S ALL BE CAUTIOUS TODAY IN TERMS OF MAKING SURE WE HAVE A CLEAN RECORD IN TERMS OF TALKING OVER EACH OTHER, JUST GENERALLY.

AND THANK YOU TO MY COURT STAFF FOR THE SPECIAL SET TODAY.

ALL RIGHT.  SO WE ARE HERE TODAY -- WE HAVE THREE MOTIONS OUTSTANDING IN THIS CASE, ONE THE MOTION TO TRANSFER, THE SECOND THE MOTION FOR SANCTIONS, AND THE THIRD, THE MOTION TO DISMISS.

THE MOTION TO DISMISS WE COMPLETED ABOUT HALF THE ARGUMENT, THERE WERE OUTSTANDING QUESTIONS, BUT GIVEN THE DISCLOSURE REGARDING THE FACT THAT THERE WERE STILL OUTSTANDING

ISSUES REGARDING A POSSIBLE MOTION TO TRANSFER, THE COURT BASICALLY STOPPED THE MOTION TO DISMISS ARGUMENT TO SEE WHAT WOULD HAPPEN IN TERMS OF THE MOTION TO TRANSFER.

SO IN THE TENTATIVE I SENT TO THE PARTIES TODAY, I HAD INDICATED THAT PARTIES SHOULD FOCUS ON THE MOTION TO TRANSFER AS WELL AS THE MOTION FOR SANCTIONS IN THE ARGUMENT.  I SUGGESTED APPROXIMATELY TEN MINUTES, GIVEN THE TENTATIVE THAT I AM INCLINED TO TRANSFER THIS CASE TO THE EASTERN DISTRICT OF VIRGINIA, AND I ALSO WANTED TO HEAR FROM PARTIES REGARDING THE SANCTIONS, WITH A COUPLE SPECIFIC QUESTIONS.

SO WITH THAT I WILL BEGIN WITH MS. ORD, JUST AS THE MOVING PARTY.  MS. ORD, YOU COULD ALSO RESERVE TIME AS WELL FOR REBUTTAL, SHOULD YOU SO CHOOSE.

MS. ORD:  THANK YOU, YOUR HONOR.  I WILL PERHAPS RESERVE SOME TIME.

WE AGREE WITH THE WAY THAT YOUR HONOR IS VIEWING THE REASONS THAT THE CASE NEEDS TO BE TRANSFERRED.  I WILL NOT REPEAT THOSE ARGUMENTS NOW AS I AGREE WITH THE WAY YOU HAVE FRAMED THEM IN THE TENTATIVE, BUT MAY NEED TO REBUT SOME OF THE RESPONSE FROM MY OPPOSING COUNSEL ON THAT.  SO I WILL MOVE DIRECTLY --

THE COURT:  LET ME RAISE ONE THING REGARDING THE TRANSFER, BUT THEN I DO AGREE WITH YOU IT MAKES MORE SENSE IN YOUR INITIAL COMMENTS TO FOCUS ON THE MOTIONS FOR SANCTIONS.

BUT REGARDING THE TRANSFER, I HAD TAKEN AN ADDITIONAL LOOK

THROUGH THE PAPERS THIS MORNING AND ONE THING WHICH STRUCK ME WHICH TIES INTO THE SOME OF THE THINGS I WAS THINKING ABOUT WAS A STATEMENT FROM THE REPLY BRIEF WHICH YOU CITE TO -- DEFENDANT CITES TO THE FIRST AMENDED COMPLAINT 56, 120 AND 128 INDICATING THAT BASICALLY THAT THE HILTON HONORS -- PLAINTIFFS ALLEGE THAT HILTON HONORS SHARED WITH THIRD PARTIES IN VIOLATION OF THE PRIVACY LAWS OR IN VIOLATION OF ITS OWN PRIVACY POLICIES.  WELL THE INFORMATION THAT THE HILTON HONORS MEMBERS SHARED IN SPECIFIC WAS THE PERSONAL INFORMATION WHICH IS FUNDAMENTALLY AT ISSUE IN THIS CASE, CORRECT, IN TERMS OF THAT PII AND SO FORTH.

AND SO I JUST WANTED YOU TO ELABORATE A LITTLE BIT ON THE POINT THAT I THINK THAT YOU WERE MAKING WHICH YOU STATE HERE, FOR EXAMPLE, AS HONORS MEMBERS, PLAINTIFFS WERE REQUIRED TO PROVIDE THEIR NAME, PHYSICAL ADDRESS AND E-MAIL ADDRESS AND HAVE THE OPPORTUNITY TO PROVIDE THE ADDITIONAL -- ADDITIONAL INFORMATION ABOUT, ET CETERA, ET CETERA, BUT IT SEEMS TO BE TYING IN THE FACT THAT THE INFORMATION AT ISSUE HERE RELATES TO WHAT THEY HAD TO DISCLOSE AS HILTON HONOR MEMBERS.

MS. ORD:  YES.

THE COURT:  WHICH THEN TIES INTO THE TERMS AND CONDITIONS.  AND AM I CORRECT THAT THAT'S TRUE IN TERMS OF THE HILTON HONORS POLICIES?

MS. ORD:  YES, THAT IS THE WAY WE BELIEVE IT WORKS.

IF YOU LOOK AT THE HILTON HONORS TERMS, IT SAYS THEY ARE ADDITIVE TO AND IN ADDITION TO THE PRIVACY POLICY, AND BOTH THE

GLOBAL PRIVACY STATEMENT AND THE HILTON HONORS TERMS EXPLAIN THAT CERTAIN INFORMATION MAY BE USED AND SHARED AND GO ABOVE AND BEYOND WHAT THE PLAINTIFFS WOULD OTHERWISE AGREED TO.  AND YOU ARE CORRECT, THE SUBSTANCE OF THIS CASE IS ABOUT ALLEGED PRIVACY VIOLATIONS ABOUT ALLEGED TRACKING USING PERSONALLY IDENTIFIABLE INFORMATION.  SO IF THE QUESTION IS WHETHER THIS RELATES TO THE HILTON HONORS TERMS AND THE GLOBAL PRIVACY POLICY, IT ABSOLUTELY DOES.

THE COURT:  AND WERE PEOPLE WHO WERE NON-HONORS MEMBERS, WOULD THEY HAVE HAD TO DISCLOSURE THE SAME LEVEL OF PII?  BECAUSE MY READING OF THAT CHART IN THE PRIVACY POLICY IS THAT IT WAS -- THAT HILTON HONORS MEMBERS WOULD HAVE TO SHARE.

MS. ORD:  YES, THAT'S CORRECT, BECAUSE YOU CAN MAKE A BOOKING WITH HILTON WITHOUT PROVIDING ANY INFORMATION OTHER THAN WHAT IS NEEDED TO MAKE YOUR HOTEL RESERVATION.  IF YOU CHOOSE TO BECOME A HILTON HONORS MEMBER, YOU PROVIDE ADDITIONAL INFORMATION, HILTON USES THAT INFORMATION AS SET FORTH IN HILTON HONORS TERMS AND THE GLOBAL PRIVACY STATEMENT BEYOND WHAT YOU WOULD HAVE HAD TO PROVIDE JUST TO MAKE A RESERVATION.

THE COURT:  OKAY.

OKAY.  LET'S TURN TO SANCTIONS.

MS. ORD:  YES, I THINK I UNDERSTAND WHERE YOUR HONOR IS IN TERMS OF THE SANCTIONS IN ASKING WHAT IT SHOULD BE TETHERED TO.  IN OUR VIEW THERE ARE A COUPLE OF DIFFERENT WAYS TO APPROACH THIS AND WE LAID THIS OUT IN OUR PAPERS.

BECAUSE THE INFORMATION WAS NOT PROVIDED WHEN IT WAS REQUESTED, AND THEN LATER DURING THE COURSE OF EVENTS LAID OUT IN OUR PAPERS, ALSO NOT PROVIDED IN CONNECTION WITH THE INITIAL DISCLOSURES OR FOLLOWING YOUR COURT'S INSTRUCTION TO DO SO, WE WERE FORCED TO BRING A TRANSFER MOTION.  WE DID REQUEST ONCE THE PLAINTIFFS CONCEDED THEY WERE HILTON HONORS MEMBERS, WHICH I BELIEVE IS NOT AT ISSUE NOW.

THE COURT:  WOULDN'T YOU HAVE HAD TO BRING THE TRANSFER MOTION EITHER WAY?

MS. ORD:  I DON'T THINK SO BECAUSE WE ASKED THEM TO STIPULATE TO TRANSFER, THERE WAS NO REASON TO BRING A MOTION IF ALL PARTIES AGREE THAT BECAUSE THEY ARE HILTON HONORS MEMBERS THEY AGREED THE CASE SHOULD BE IN VIRGINIA, WE WOULD HAVE STIPULATED AND ASKED YOUR HONOR TO TRANSFER.

THE COURT:  WELL IT SEEMS LIKE THEY ARE STILL, EVEN THOUGH THEY RECOGNIZE NOW THEY ARE HILTON HONORS MEMBERS, THEY ARE STILL DISPUTING THE TRANSFER MOTION.

SO IT SEEMS TO ME THAT EITHER A MORE APPROPRIATE REMEDY, IF THE COURT WOULD CHOOSE TO GRANT IT, SHOULD BE TETHERED EITHER JUST TO THE INITIAL OF WHEN THAT ANALYSIS IN TERMS OF MAKING THOSE CONNECTIONS, SO THE VERY INITIAL PART OF THE MOTION TO TRANSFER WHICH IS UNRELATED TO THE MOTION TO TRANSFER ITSELF BUT RATHER THE USE OF THAT INFORMATION SO THE VERY INITIAL ENTRIES; OR IF ANYTHING, IT SEEMS LIKE IT MIGHT ACTUALLY BE MORE SO ON THE SECOND MOTION TO DISMISS.

MS. ORD:  THAT'S EXACTLY WHAT MY SECOND POINT WAS GOING TO BE, WE AGREE WITH YOUR HONOR BECAUSE IF THAT INFORMATION HAD BEEN PROVIDED TO US EITHER BEFORE THE FIRST DISMISSAL MOTION OR EVEN BEFORE THE SECOND DISMISSAL MOTION WAS BROUGHT WE WOULD HAVE BEEN ABLE TO MAKE ARGUMENTS IN THAT DISMISSAL MOTION WHICH ARE POTENTIALLY CASE DISPOSITIVE AND CERTAINLY ISSUE DISPOSITIVE.  WE WOULD HAVE CERTAINLY ARGUED THAT THERE IS A CLASS ACTION WAIVER WHICH WOULD HAVE KILLED THIS CLASS ACTION.  WE WOULD HAVE ARGUED THAT BECAUSE THE PLAINTIFFS, FOR THE REASONS THAT YOU AND I JUST WENT THROUGH, AGREED TO ADDITIONAL USES OF THEIR DATA THROUGH THE HILTON HONORS TERMS AND THE GLOBAL PRIVACY STATEMENT, THEY AGREED TO THE TRACKING AND INFORMATION SHARING THAT'S AT ISSUE IN THIS CASE.

THE COURT:  I DEFINITELY DID NOT AGREE WITH THAT.  I KNOW THAT'S NOT POINT IN TERMS OF WALKING THROUGH WHAT I DID, BUT YES.

MS. ORD:  RIGHT.  NO, I DIDN'T MEAN TO IMPLY YOU AGREED WITH ANY OF THESE ARGUMENTS BUT THESE ARE THE THINGS THAT WOULD HAVE COME TO THE FOREFRONT IN THAT INITIAL DISMISSAL MOTION.  YOUR HONOR WOULD HAVE RULED UPON THEM, WE MIGHT HAVE WON THOSE ISSUES, WE MIGHT HAVE LOST THEM, BUT WE WOULD HAVE HAD THE ABILITY TO BRING THEM IN THE FIRST MOTION.

AND IF WE WON ON ANY OF THESE ISSUES THEN NO SECOND DISMISSAL MOTION WOULD HAVE BEEN REQUIRED, AND CERTAINLY THE

CONSUMPTION OF THE COURT'S TIME IS ALSO A CONCERN AS WELL. MY CLIENT IS OUT CONSIDERABLE MONEY BECAUSE OF THIS PROCESS BECAUSE WE HAVE TO GO THROUGH TWO ROUNDS OF DISMISSAL MOTIONS, AND WE KNOW THAT YOUR HONOR ALSO HAD TO GO THROUGH MULTIPLE ROUNDS OF DISMISSAL MOTIONS AND SCHEDULING ORDERS AND OTHER THINGS WHICH WOULD ORDINARILY HAVE FALLEN TO THE COURT IN THE EASTERN DISTRICT.

I ALSO AGREE WITH YOUR HONOR ABOUT THE INFORMATION IN THE FIRST PART OF THE MOTION YOU REFERRED TO WHICH IS ALL THE WORK WE HAD TO DO TO FINALLY EXTRACT THIS INFORMATION FROM THE PLAINTIFF'S COUNSEL AS SOON AS WE HAD IT, WE WERE ABLE TO DETERMINE THAT THEY ARE IN FACT HILTON HONORS MEMBERS.

THE COURT:  OKAY.  THOSE WERE THE QUESTIONS I HAD.

AND JUST TO CONFIRM, THOSE RECORDS, THE SECOND MOTION TO DISMISS NOR THE HEARING APPEARANCES, ARE THOSE WITHIN THE BILLING STATEMENTS THAT COUNSEL HAD PROVIDED?

MS. ORD:  THEY ARE NOT.  WE LIMITED OURSELVES TO THE TRANSFER MOTION FOR OUR SANCTIONS PAPERS BUT WE WOULD BE HAPPY TO PROVIDE ADDITIONAL MATERIAL IF NEEDED.

THE COURT:  OKAY.  ANYTHING FURTHER, MS. ORD?  YOU'VE ANSWERED MY QUESTIONS, YOU ARE WELCOME TO MAKE ANY FURTHER ARGUMENTS OR POINTS THAT YOU WISH TO BRING TO THE COURT'S ATTENTION.

MS. ORD:  THAT'S ALL I HAVE FOR YOU NOW, YOUR HONOR, I WILL RESERVE THE REST OF THE TIME.

THE COURT:  THANK YOU.

ALL RIGHT.  LET ME TURN TO SHAH.  I MEAN, SORRY, MR. PATEK.  LET ME TURN TO YOU IN TERMS OF PLAINTIFF IN TERMS OF THE FOCUS BOTH IN TERMS -- AND I WILL LET YOU TAKE THE ARGUMENT.  I HAD ONE SPECIFIC QUESTION WHICH WAS RAISED WHICH I WOULD LIKE YOU TO START WITH IN TERMS OF WHEN AND HOW DID YOU LEARN THAT EACH PLAINTIFF WAS A HILTON HONORS MEMBER, AND THEN AFTER THAT I WILL LET YOU TAKE IT TO WHERE YOU WOULD LIKE TO TAKE IT.

MR. PATEK:  SURE.

SO I CONTACTED THE PLAINTIFFS ON JUNE 23RD TO SEEK THE INFORMATION.  MR. SHAH CONFIRMED ON THAT DATE.  THE PLAINTIFF GABRIELLI DENIED THAT HE HAD ANY ACCOUNT AND WE DIDN'T SEE ANY EVIDENCE OF ONE.

THE COURT:  AND YOU SAID YOU DIDN'T SEE ANY EVIDENCE OF ONE, WHAT DID YOU LOOK AT?

MR. PATEK:  WE ASKED HIM TO SEARCH HIS E-MAILS FOR ANYTHING INDICATING THAT HE HAD JOINED AS A HILTON HONORS MEMBER.

THE COURT:  OKAY.  YOU MAY CONTINUE.

MR. PATEK:  OKAY.  AND WE BASICALLY DID THE SAME THING WITH PLAINTIFF WILEY, WHO SAID THAT SHE HAD A MEMORY THAT SHE YEARS AGO MAY HAVE SIGNED UP FOR A HILTON ACCOUNT BUT SHE COULDN'T REMEMBER WHAT IT WAS.  AND WHEN I ASKED HER FOR -- TO LOOK UP SOME RECORDS TO CONFIRM, SHE COULDN'T FIND ANYTHING.

SO WE DIDN'T REALLY KNOW FOR SURE THAT SHAH -- I'M SORRY, NOT SHAH, THAT WILEY OR GABRIELLI WERE HILTON HONORS MEMBERS UNTIL OPPOSING COUNSEL INFORMED US AFTER THE JOINT CMS WAS SUBMITTED.

THE COURT:  WHAT SORT OF WAS THE QUESTION REGARDING THEIR HILTON HONORS MEMBERSHIP RAISED DURING THE SCREENING OF THE CASE OR THE JUNE 10TH HEARING COUNSEL REPRESENTED TO ME THAT IS MY UNDERSTANDING IN SCREENING FOR PLAINTIFFS TO BRING THIS CASE, WE ESPECIALLY LOOKED FOR PEOPLE WHO HAD NOT JOINED THE REWARDS PROGRAM AND SUCH.  SO REALLY UNLESS SOMEBODY MADE A MISTAKE, THESE PLAINTIFFS SHOULDN'T BE MEMBERS OF THE PROGRAMS.

SO WE CAN TALK ABOUT THAT MORE IN THE AMENDED COMPLAINT, WE CAN CERTAINLY TRY TO CREATE SOME ASSURANCES, WE ARE NOT TRYING TO PULL THE WOOL OVER ANYONE'S EYES.

SO WHAT EFFORTS WERE MADE IN THE SCREENING?

MR. PATEK:  WELL I PERSONALLY DID NOT DO THE SCREENING BUT THEY SHOULD HAVE BEEN ASKED QUESTIONS ABOUT WHETHER OR NOT THEY WERE HILTON HONORS MEMBERS AND THEY SHOULD HAVE BEEN ASKED TO LOOK FOR EVIDENCE OF WHETHER OR NOT THEY HAD SOME KIND OF HILTON ACCOUNT, AND I WOULD HAVE TO CONCEDE, YOUR HONOR, THAT THAT APPEARS THAT THAT DID NOT OCCUR, AND YOU KNOW, I -- IT SHOULD HAVE AND THAT WAS DEFINITELY A MISTAKE, BUT WE DIDN'T DO IT, OR WHATEVER QUESTIONS WERE ASKED DIDN'T ACTUALLY ELICIT THE INFORMATION, BUT MY SUSPICION IS THAT THEY JUST WEREN'T ASKED THOSE QUESTIONS DIRECTLY.

THE COURT:  SO YOU SAID YOU WOULD HAVE ORIGINALLY FOLLOWED UP WITH MR. SHAH, AND MR. SHAH CONFIRMED ON THE 23RD OF JUNE THAT HE WAS A HILTON HONORS MEMBER.

MR. PATEK:  WELL THAT HE HAD A MEMBERSHIP.  HE FELT THAT HE HAD BEEN SIGNED UP BY SOMEBODY ELSE.  BUT WE HAVE CONCEDED -- FOR THE PURPOSES OF THIS MOTION, WE ARE NOT CONTESTING THAT HE WAS SIGNED UP.

THE COURT:  BUT YOU KNEW THAT ON THE JUNE 23RD.

MR. PATEK:  CORRECT.

THE COURT:  AND WHEN DID YOU TELL MR. ORD THAT FACT?

MR. PATEK:  NOT UNTIL THE JOINT CMS WHICH WAS IN AUGUST.

THE COURT:  OKAY.  THEN CONTINUING WITH GABRIELLI, WHEN DID YOU ACTUALLY FIND OUT?

MR. PATEK:  NOT UNTIL WE WERE INFORMED BY OPPOSING COUNSEL.

THE COURT:  AND THEN REGARDING MS. WILEY?

MR. PATEK:  AGAIN, SHE SAID SHE HAD A MEMORY OF POSSIBLY HAVING SIGNED UP FOR SOMETHING BUT WE DIDN'T KNOW FOR SURE UNTIL WE GOT THE CONFIRMATION BY OPPOSING COUNSEL.

THE COURT:  AND WHEN SHE SAID SHE COULD HAVE A MEMORY THAT SHE WAS SIGNED UP, WHEN DID SHE TELL YOU THAT?

MR. PATEK:  THAT WAS JUNE 23RD.  I CONTACTED ALL THREE PLAINTIFFS ON THAT SAME DATE.

THE COURT:  AND THEN WHAT FOLLOWUP DID YOU DO AFTER

THAT STATEMENT?

MR. PATEK:  I ASKED HER TO SEARCH HER E-MAILS AND SEND ME STUFF JUST TO CONFIRM WHAT IT WAS THAT SHE HAD DONE AND I NEVER RECEIVED ANYTHING.

THE COURT:  DID YOU FOLLOW UP?

MR. PATEK:  NO, I DID NOT, YOUR HONOR.  I JUST -- GOT FOCUSED ON OTHER THINGS AND IT FELL OFF MY RADAR.  AND I FULLY CONCEDE THAT THAT WAS A BIG MISTAKE AND IT SHOULDN'T HAVE HAPPENED AND THAT I DROPPED THE BALL, AND I UNDERSTAND WHY YOUR HONOR IS INCLINED TO ISSUE SANCTIONS GIVEN THAT.

IN 22 YEARS OF PRACTICE, I HAVE NEVER BEEN SANCTIONED BEFORE, I'M REALLY BESIDE MYSELF THAT IT'S HAPPENING HERE, BUT I FEEL LIKE EVERYBODY WHO IS IN QUICKSAND WHO STRUGGLES TO GET OUT, I DIG MYSELF DEEPER.  I SCREWED UP.  I DID.  I DIDN'T MEAN TO, I REALLY DIDN'T MEAN TO MISLEAD ANYONE, YOU KNOW, I JUST THOUGHT THIS WAS ALL GOING TO COME OUT OVER THE COURSE OF EARLY DISCOVERY.

USUALLY IN THE EARLY PHASES OF LITIGATION THERE WOULD BE VENUE-RELATED DISCOVERY AND THINGS LIKE THIS WILL COME OUT.  GRANTED I SAW THAT SHAH HAD THE AGREEMENT, BUT AT THE SAME TIME I THOUGHT GABRIELLI STILL SEEMED NOT TO HAVE MADE ANY AGREEMENT, SO I DIDN'T THINK IT WAS GOING TO BE FATAL TO THE CASE OVER ALL.

SO YOU KNOW, I THOUGHT IT WOULD JUST BE DEALT WITH IN THE NORMAL COURSE OF THINGS AND THEN I JUST FORGOT ABOUT IT AND

DIDN'T TURN BACK TO IT UNTIL WE WERE DRAFTING THE JOINT CMS.

AND I WOULD CONCEDE WHEN THE SECOND MOTION TO DISMISS WAS FILED, I THINK THERE WAS STUFF IN THERE, THAT SHOULD BE A FLAG FOR ME.  AGAIN, I FOCUSED ON RESPONDING TO THE MOTION TO DISMISS AND I JUST, IT WAS JUST ON THE BACK BURNER.

THE COURT:  SO COUNSEL, THE WAY THE SYSTEM WORKS AND WHAT I MUST DO AS A JUDGE IS TO TRUST COUNSEL'S REPRESENTATIONS TO ME, AND WHEN I SAID TO YOU BACK IN JUNE, I WILL TRUST COUNSEL'S REPRESENTATION THAT THEY ARE MAKING A GOOD FAITH EFFORT, I'M TRUSTING YOUR REPRESENTATION THAT YOU ARE MAKING EVERY EFFORT.  THAT WAS BACK IN JUNE ON JUNE 10TH.  YOU REASSURED ME AT THAT TIME YOU WOULD AND THEN YOU DROPPED THE BALL AGAIN AFTER IT HAD ALREADY BEEN DROPPED.

MR. PATEK:  YES, YOUR HONOR.  I UNDERSTAND THE POINT YOU ARE MAKING.  I DROPPED THE BALL.  I DID.  I KNOW THAT WHAT I DID WAS NOT WHAT THE COURT EXPECTS OF ME.  AND I AM VERY UNHAPPY WITH HOW THIS HAS ALL PANNED OUT AND I UNDERSTAND THAT THE BUCK STOPS WITH ME AND THAT I'M THE ONE WHO HAS TO TAKE RESPONSIBILITY AND I WILL TAKE THAT BULLET.

THE COURT:  SO I NEED TO THINK ABOUT WHAT SANCTION WOULD BE APPROPRIATE.  I DON'T THINK THE RIGHT FIT IS, FRANKLY, THE WHOLE MOTION TO TRANSFER.  I MADE THAT PRETTY CLEAR IN MY CONVERSATION THAT I JUST HAD WITH MS. ORD.

MS. ORD, I AM GOING TO ASK YOU TO SUBMIT YOUR BILLING STATEMENTS FOR THE HEARING, THE MOTION TO DISMISS HEARING IN

OCTOBER.

MS. ORD:  OKAY.

THE COURT:  AND I DO THINK -- I THINK THE FIRST SIX ENTRIES ARE SO -- OF THE STATEMENTS WHICH WERE SUBMITTED UPON INFORMATION -- UPON INFORMATION THAT WAS PROVIDED REGARDING THE OTHER PLAINTIFFS AND WHAT THEY HAD TO DO TO FIGURE IT OUT, I THINK THAT WAS APPROXIMATELY 8 TO $10,000.  SO THAT'S SORT OF WHERE I'M LANDING RIGHT NOW.  WE ARE GOING TO SEE.

MR. PATEK:  OKAY.  MAY I, YOUR HONOR?

THE COURT:  YES.

MR. PATEK:  I JUST WANT TO SAY I AGREE WITH THAT ANALYSIS BASICALLY, I THINK THAT SEEMS REASONABLE, I WOULD AGREE THAT THAT FEELS LIKE A MORE CAUSALLY LINKED RESULT OF THE FAILURE ON MY PART.  SO I THINK I WILL JUST LEAVE IT AT THAT.

THE COURT:  SO I'M GOING TO TURN US BACK TO THE MOTION TO TRANSFER BECAUSE WHAT THIS DID AND -- THE NUMBER OF JUDICIAL HOURS AND STAFF HOURS ON THIS, BECAUSE THIS NEW INFORMATION, AND FRANKLY SPEAKING, I FELT THE EFFORT WHICH I SPENT ON THIS MOTION TO TRANSFER WITH MY STAFF WAS A BIT OF A WASTE OF TIME BECAUSE WHEN IT CAME DOWN TO IT, IN REALLY LOOKING AT BACKWARDS ENGINEERING THIS, STARTING WITH THE PRIVACY INFORMATION, YOU HAVE THE PRIVACY INFORMATION, THE PII THAT'S FUNDAMENTALLY AT ISSUE IN THIS CASE, IS IN THAT GLOBAL PRIVACY STATEMENT.  THAT GLOBAL PRIVACY STATEMENT, THE INFORMATION THAT IS AT ISSUE, THE PII, ONLY THE HILTON HONORS

MEMBERS HAD TO GIVE IT, TO A LARGE EXTENT, WHICH THEN ALL TIES IN WITH THE TERMS AND CONDITIONS.

I'M NOT SAYING THIS VERY ARTICULATELY BECAUSE IT'S ALL SORT OF CEMENTED TODAY, BUT IT BOILS DOWN TO THAT PII WHICH TIES DIRECTLY TO THE PRIVACY STATEMENT WHICH DIRECTLY TIES TO THE TERMS AND CONDITIONS, AND IF YOU ARE ENTERING THE WEBSITE OR SIGNING UP FOR HILTON HONORS, BOTH ARE SHOWN THERE, MAKES IT SEEM THAT THIS CASE MUST BE TRANSFERRED, REVERSE ENGINEERING IT FROM THE PRACTICALITIES OF WHAT PLAINTIFFS RELY ON IN THEIR CASE, IN THEIR FIRST AMENDED COMPLAINT.

AND I'M NOT ARTICULATING IT WELL BUT I WILL BE ARTICULATING IT MUCH MORE CLEARLY IN TERMS OF THE OPINION, OR IF PARTIES STIPULATE TO TRANSFER, THAT WOULD SAVE TIME IN TERMS OF ME HAVING TO DO THE OPINION.  BUT I'M GOING TO LEAVE THAT THERE FOR NOW.  BUT I WOULD LIKE COUNSEL, IF THERE'S ANYTHING YOU WANT TO SAY ABOUT -- KEEPING IN MIND IN TERMS OF MOTION TO TRANSFER AT THIS POINT, LET'S TALK THAT OUT.

MR. PATEK:  SURE.

SO FIRST I WANT TO START, I THINK THERE'S A PORTION OF THE REPLY BRIEF THAT TALKS ABOUT DISCLOSURES THAT ARE REQUIRED BY THE HILTON HONORS PROGRAM.  AND AS PRESENTED IN THE REPLY BRIEF, THEY ARE ACTUALLY EDITED IN A WAY THAT TAKES THEM SLIGHTLY OUT OF CONTEXT.

SO FOR EXAMPLE, THE NAME AND ADDRESS INFORMATION IS FOR INFORMATION SUPPLIED DURING ENROLLMENT, RIGHT.  AND SIMILARLY,

SOME OF THE ROOM PREFERENCES AND STUFF IS INFORMATION THAT GETS PUT INTO THE MEMBER PREFERENCES, RIGHT, AND I WOULD CONCEDE THAT TO THE EXTENT THERE MIGHT BE A DISCLOSURE OF THAT INFORMATION, CLEARLY THE HILTON HONORS AGREEMENT COVERS THAT. BUT I DON'T READ THAT AS INDICATING THAT THERE IS GOING TO BE A GLOBAL COLLECTION OF BROWSING DATA EVERY TIME A PERSON BROWSES THE HILTON WEBSITE.

I MEAN, THE THINGS THAT THE HILTON HONORS AGREEMENT IS TALKING ABOUT IN THAT PARAGRAPH ARE MUCH MORE LIMITED AND ARE OCCURRING CLEARLY WITHIN THE PURVIEW OF THE HILTON HONORS PROGRAM AND THE MEMBERS' WEBSITE WHERE THEY ARE GOING TO BE SIGNING UP AND THEN STORING THEIR PROFILE.

SO THAT'S REALLY A DIFFERENT CATEGORY OF INFORMATION THAN WHAT WE WERE ALLEGING AS COLLECTED AND SHARED.

AND I JUST WANT TO BE CLEAR, I UNDERSTAND THE CATEGORIES OF INFORMATION MAY OVERLAP SOMEWHAT, SO FOR EXAMPLE IT MIGHT BE THAT E-MAIL WAS PUT INTO THE HILTON HONORS PROGRAM AND THE E-MAIL IS COLLECTED AND SHARED DURING THE PRODUCING OR SOMETHING LIKE THAT, BUT THOSE ARE STILL VERY DISTINCT ACTIVITIES.  AND I THINK THIS IS PART OF WHAT THE NINTH CIRCUIT WAS GETTING AT IN CLARK-ALONSO RIGHT, WHERE THERE WAS A LOYALTY AGREEMENT FOR SOUTHWEST AIRLINES, I BELIEVE, AND THE PERSON HAD CALLED IN TO GET HELP, AND THERE HAD THEN BEEN A CIPA VIOLATION WHERE THEY WERE RECORDING A PHONE CALL AND THEY THEN TRIED TO USE THE VENUE PROVISION IN THAT LOYALTY PROGRAM AGREEMENT TO

ARGUE THAT THE VENUE HAD TO BE IN THE FORUM SELECTION CLAUSE FOR THE LOYALTY PROGRAM.  AND THE NINTH CIRCUIT CAME BACK AND SAID NO, LIKE WHAT'S GOING ON IN THAT PHONE CALL IS FUNDAMENTALLY UNRELATED TO PARTICIPATING IN THE LOYALTY PROGRAM, AND SO THE SCOPE OF THE LOYALTY PROGRAM DOES NOT ENCOMPASS THE PRIVACY VIOLATIONS THAT ARE BEING ALLEGED.

SO THAT'S REALLY THE KIND OF STUFF WE WERE LOOKING AT. AND THERE ARE SIMILAR ANALYSIS IN REVITCH AND WAL-MART.  AND I'M NOT SAYING THOSE ARE PERFECTLY ON POINT, REVITCH AND WAL-MART ARE BOTH ARBITRATION CASES, BUT IN ALL OF THESE RECENT CASES THERE'S BEEN MOVEMENT IN THE NINTH CIRCUIT TO ESSENTIALLY PUSH BACK, I THINK, ON WHAT IS PERCEIVED AS OVERREACH IN ADHESION AGREEMENTS THAT LIMIT RIGHTS OF CONSUMERS TO SEEK REDRESS IN THEIR LOCAL FORUM.  THAT'S WHAT I READ OUT OF THOSE CASES, RIGHT.

WAL-MART THERE WAS AN ONLINE PURCHASE AND THEN THERE WAS LATER A SERVICE AGREEMENT PURCHASE.  AND WAL-MART TRIED TO ARGUE THOSE WERE RELATED DISPUTES AND THE NINTH CIRCUIT SAID NO, THEY WEREN'T.  AND SIMILARLY IN REVITCH.

AND I DO ALSO WANT TO MAKE ONE OTHER POINT ABOUT CLARK-ALONSO BECAUSE IN THE REPLY BRIEF COUNSEL CHARACTERIZES THAT AS PURELY A CASE THAT WAS DECIDED ON THE "ARISING OUT OF" LANGUAGE AS OPPOSED TO THE "RELATING" LANGUAGE, AND THAT'S INCORRECT.  CLARK-ALONSO, THE COURT ACTUALLY ADDRESSED BOTH BECAUSE THE AGREEMENT CONTAINED BOTH PIECES OF LANGUAGE, AND

THE NINTH CIRCUIT SAID THAT THERE WAS NO LOGICAL RELATION UNDER THE ROLLING STANDARD.

SO I DON'T THINK I NEED TO -- I DON'T WANT TO TAKE UP TOO MUCH OF YOUR TIME BECAUSE YOU ARE ALREADY FEELING LIKE WE HAVE TAKEN UP TOO MUCH, BUT WHEN I LOOK AT THESE AGREEMENTS, I DO THINK THAT ORDINARY PEOPLE WHO ARE SIGNING UP FOR HILTON HONORS AREN'T GOING TO THINK THAT THEN ALL OF THEIR BROWSING ACTIVITY IS GOING TO BE TRACKED, WHETHER OR NOT THEY ARE SIGNED INTO HILTON HONORS.

AND I WOULD POINT OUT THE LOSSON CASE ON WHICH DEFENSE COUNSEL RELIED, I MEAN IN THAT CASE, THE ALLEGED TRACKING OCCURRED WHILE THE MEMBERS OF THE SERVICE WERE LOGGED INTO THEIR ACCOUNTS.  SO THAT'S JUST A VERY DIFFERENT SITUATION, AND ALSO THAT AGREEMENT HAD THE "RELATING TO" LANGUAGE, AND I GUESS THIS IS ONE THING THAT I WOULD JUST POINT OUT IS THE HILTON HONORS AGREEMENT DOESN'T CONTAIN THE "ARISING OUT OF" AND "RELATING TO" LANGUAGE.

THE COURT:  RIGHT.

MR. PATEK:  OPPOSING COUNSEL HAS ARGUED THAT MEANS IT'S EVEN BROADER.

THE COURT:  I DON'T AGREE WITH THAT.

MR. PATEK:  THEN I'M FLOGGING A DEAD HORSE, SO TO SPEAK.

THE COURT:  SO I DO THINK IT HAS TO BE ONE OF THOSE TWO NARROW READINGS WHICH IS EITHER THE "RELATING" OR

"ARISING", AND HERE I THINK THAT THERE IS THAT RELATIONSHIP.

MR. PATEK:  SINCE THE "RELATING TO" LANGUAGE ISN'T PRESENT, I GUESS.

THE COURT:  "ARISING."  BASICALLY NEXUS, THERE NEEDS TO BE A REASONABLE -- AND IT'S SOMETHING WHAT THE REASONABLE CONSUMER, OR WHAT THAT NEXUS WOULD BE IN TERMS OF THEM.  THE RELATING IS BROADER THAN PERHAPS EVEN I WOULD READ IT AS, BUT IT WOULD BE -- AND YOU HAD SOME LANGUAGE, COUNSEL, WHICH YOU MAKE REFERENCE TO ACTUALLY IN PLAINTIFF'S OWN BRIEFING, WHICH IF I'M -- BUT YOU MAY CONTINUE WHILE I'M LOOKING FOR THE EXACT LANGUAGE.

MR. PATEK:  SURE.  WELL I GUESS THE ONE POINT THAT I WOULD MAKE IS GENERALLY SPEAKING, THE LAW RELATING TO THE "ARISING OUT OF" AND "RELATING TO" LANGUAGE IS PRETTY CLEARLY PUTTING AN ONUS ON THE DRAFTERS OF THE CONTRACTS TO MAKE CLEAR JUST HOW BROAD THEIR AGREEMENTS ARE.

AND IN GENERAL CONTRACTS ARE, WHEN THERE'S AMBIGUITY, IT'S INTERPRETED SORT OF AGAINST THE DRAFTER BECAUSE THE ASSUMPTION IS THE DRAFTER IS IN CONTROL AND THEY SHOULD HAVE BEEN ABLE TO MAKE IT CLEAR.

AND I THINK THAT APPLIES DOUBLY HERE WHERE IT'S AN ADHESION CONTRACT AND ORDINARY CONSUMERS ARE GIVING UP THEIR RIGHTS THAT THEY ARE NOT REALLY AWARE OF.

THE COURT:  AND THIS IS THE PART WHICH I WAS REFERRING TO.

SO IN PLAINTIFF'S BRIEF, THE PLAINTIFF DESCRIBES -- THE BRIEF BASICALLY ARGUES THAT IS NO REASONABLE PERSON COULD THINK THAT CHECKING THE BOX ACCEPTING THE TERMS AND CONDITIONS FOR A HILTON HONORS PROGRAM WOULD OBLIGATE THEM TO ARBITRATE LITERALLY EVERY DISPUTE THE WAY HE OR SHE MAY HAVE.

AND I AGREE WITH PLAINTIFF THAT IT BECOMES THIS REASONABLE PERSON APPROACH, IT'S NOT AS PROCEED PER SE AS THE RELATING TO AND SUCH, BUT IN TERMS OF THE REASONABLE PERSON APPROACH, AND APPLY IT TO THESE CIRCUMSTANCES.

THIS DISPUTE DOES SEEM TO HAVE A PLAIN NEXUS IN TERMS OF THE POLICIES, BOTH OF THEM WHICH ARE AT ISSUE, GIVEN THE FACT THAT WHEN THE USER LOGS IN TO OR JOINS HILTON HONORS, THE POP-UP SCREEN SAYS, BY JOINING, I AGREE THAT THE HILTON HONORS TERMS AND CONDITIONS WILL APPLY, THAT THE GLOBAL PRIVACY STATEMENT WILL APPLY.  AND HAVING THOSE THERE, AND SO THE REASONABLE USER WHO IS JOINING HILTON HONORS WOULD SEE THOSE, AND THE FACT THAT THE GLOBAL PRIVACY STATEMENT INDICATES THAT HILTON HONORS ARE GIVING UP MORE OF THEIR PII BEFORE JOINING OTHER HILTON HONORS.  TO ME, THERE IS THAT NEXUS.

MR. PATEK:  SURE.  I UNDERSTAND.  I DEFINITELY AGREE THAT THE REASONABLE PERSON APPROACH MAKES SENSE AND I UNDERSTAND WHERE YOUR HONOR IS COMING FROM IN TERMS OF --

THE COURT:  THAT'S THE REASONABLE APPROACH YOU SUGGESTED, COUNSEL.

BUT THEN I GUESS THE ONE OTHER THING THAT I WOULD CAUTION

ON IS JUST TO BE VERY CAREFUL ABOUT WHAT EVIDENCE HAS BEEN PRESENTED ABOUT WHAT IT IS THAT THE PEOPLE ACTUALLY CONSENTED TO.

SO -- AND WE HAVEN'T REALLY TALKED ABOUT THIS MUCH BUT THE GLOBAL PRIVACY POLICY THAT EXISTS TODAY IS NOT NECESSARILY THE SAME ONE THAT EXISTED BACK IN 2019 OR 2020 OR 2022 OR WHENEVER THE INDIVIDUAL PLAINTIFFS WOULD SUPPOSEDLY HAVE SEEN IT.

AND A LOT OF THE BROWSING BEHAVIOR THAT IS NOW BEING PUT FORTH AS BEING ENCOMPASSED BY THE GLOBAL PRIVACY POLICY WAS NOT DISCLOSED IN THE OLDER VERSIONS OF THAT AGREEMENT.

NOW THE ARGUMENT HAS BEEN MADE THAT THEY RESERVE THE RIGHT TO CHANGE THE TERMS AT ANY TIME AND THAT THEY DID SO BY CONTINUING TO BE IN THE HILTON HONORS PROGRAM, THE PLAINTIFFS AGREE TO THAT.

AGAIN, THIS IS NOT SOMETHING THAT WAS LITIGATED HEAVILY IN THE BRIEFS BUT IF WE ARE GOING BACK TO MUTUAL ASSENT AND WHAT THE CONTRACT FORMATION WAS AND WHAT THE INTENT OF THE PARTIES WAS AT THE TIME THE AGREEMENT WAS FORMED, THEN WHATEVER POLICY WAS IN PLACE AT THAT TIME IS THE ONE THAT IS MOST RELEVANT.

AND I THINK THAT SOME OF THE OLDER AGREEMENTS, LIKE A LOT OF THE STUFF THAT WAS IN THERE TODAY, WAS NOT IN THERE FIVE YEARS AGO.

THE COURT:  ALL RIGHT.

MS. ORD, LET ME HEAR BACK FROM YOU REGARDING THE TRANSFER MOTION AND THEN I HAVE A PROPOSAL FOR PARTIES REGARDING THE

SANCTIONS MOTION.

MS. ORD:  THANK YOU, YOUR HONOR.

I DON'T THINK ANY OF THE ARGUMENT THAT WE JUST WENT THROUGH SHOULD CHANGE THE COURT'S POSITION, IT CERTAINLY DOES NOT CHANGE OURS.  THE HILTON HONORS AGREEMENT HAS THE PRIVACY POLICY LINKED IN IT TWICE.  THE PRIVACY POLICY LAYS OUT A BUNCH OF THE DIFFERENT WAYS THAT YOUR INFORMATION IS USED, IT CLEARLY ARISES FROM WHAT IS DIRECTLY AT ISSUE IN THIS CASE ABOUT ALLEGED PRIVACY VIOLATIONS, SO WE BELIEVE THAT THERE SHOULD BE NO CONCERN WITH TRANSFERRING THE CASE AND THAT YOUR HONOR SAID YOU MUST TRANSFER THE CASE GIVEN YOUR ARGUMENT TO THE HILTON HONORS TERMS AND THE VENUE PROVISION THAT'S IN THERE.

IF THERE'S ANYTHING IN PARTICULAR YOU WOULD LIKE ME TO ADDRESS, I'M HAPPY TO DO SO, AND I HAVE ONE QUICK REQUEST FOR A CLARIFICATION FROM YOU.

THE COURT:  CAN YOU ADDRESS THE POINT COUNSEL MADE IN TERMS OF WHAT EVIDENCE IS BEFORE THE COURT IN TERMS OF WHICH AGREEMENTS WERE AND WHAT WAS IN PLACE?

MS. ORD:  YES.

THE EVIDENCE BEFORE THE COURT IS MULTIPLE VERSIONS OF THE HILTON HONORS AGREEMENT.  WE PROVIDED THE DIFFERENT SECTIONS AND I BELIEVE REPRESENTED IN OUR PAPERS THAT THOSE TERMS BASICALLY HAVEN'T CHANGED DURING THE COURSE OF THE PLAINTIFF'S CASE.  WE DID ALSO PROVIDE THE GLOBAL PRIVACY STATEMENT, THAT MAY HAVE HAD SOME CHANGES IN IT, BUT I DON'T THINK THEY ARE

MATERIAL CHANGES, AND EVEN IF THERE WERE THINGS ADDED TO IT ALONG THE WAY, FOR EXACTLY THE REASON OPPOSING COUNSEL SAYS, WHEN YOU JOIN THE HILTON HONORS TEAM, YOU AGREE THAT ANY CHANGES TO THE TERMS OR THE PRIVACY POLICY ARE ACCEPTED SO LONG AS YOU REMAIN A MEMBER OF HILTON HONORS, AND IT'S UNDISPUTED THAT ALL THESE FOLKS DID.

AND SO WHATEVER WAS SUPPOSED TO BE SHARED AND WHATEVER THEY AGREED TO SHARE AT ANY GIVEN TIME, THEY ACCEPTED THOSE TERMS.  AND THERE IS A LOT OF STUFF IN THERE TAKING US BACK TO OUR FIRST DISMISSAL MOTION WHERE YOUR HONOR WAS INCLINED TO DISMISS THIS CASE AND INSTRUCTED THE PLAINTIFFS TO GO BACK AND BULK UP THEIR ALLEGATIONS ABOUT WHAT INFORMATION WAS ALLEGEDLY SHARED, WHAT PLAINTIFFS ALLEGEDLY PROVIDED AND HOW IT WAS USED BY HILTON.  AND THEY DID THAT, INCLUDING FOCUSING A LOT ON GEOLOCATION.  AND IF YOU LOOK AT THE CHART THAT YOUR HONOR REFERENCED IN THE PRIVACY POLICY, IT'S PRETTY CLEAR THAT MOST OF THOSE NEW ALLEGATIONS WOULD BE SQUARELY COVERED BY THE AGREEMENT OF THE HILTON HONORS MEMBERS TO ABIDE BY THE TERMS OF THE PRIVACY POLICY.

SO I THINK THAT BRINGS US FULL CIRCLE TO THE IDEA THAT THIS IS SQUARELY WITHIN "RELATED TO" "A REASONABLE PERSON" ALL OF THAT AND THAT THE MATTER MUST BE TRANSFERRED.

THE COURT:  IN THE TENTATIVE I HAD SENT YOU ALL -- THE FIRST THREE PARAGRAPHS OF THE HILTON HONORS TERMS AND CONDITIONS AND THE SIGNIFICANCE OF THE DEFINITIONAL ARGUMENTS

RAISED BY PLAINTIFF, SO WHAT IS HILTON'S RESPONSE IN TERMS OF THAT?

MS. ORD:  YES.  WE THINK IT'S CRYSTAL CLEAR FROM THE TERMS THEMSELVES.

THE COURT:  I THINK THAT'S A BIT OF AN ADVERSITY.

MS. ORD:  BECAUSE OF THE USE OF THE WORD "AFFILIATE," I THINK WHAT YOU ARE ASKING ME IS ARE WE SURE THIS APPLIES TO HILTON HONORS AND HILTON WORLDWIDE HOLDINGS?  IS THAT THE QUESTION, THAT THE HILTON HONORS TERMS INCLUDE HILTON WORLDWIDE HOLDINGS?

THE COURT:  JUST IN TRYING TO CONSTRUE OR LOOKING AT THE FIRST THREE PARAGRAPHS, IF THERE'S ANYTHING IN TERMS OF WHETHER -- AND YES, THE LATTER PART OF WHAT YOU JUST SAID.

MS. ORD:  YES.  SO THE FIRST OF THOSE PARAGRAPHS IS THE ONE THAT SAYS HILTON HONORS IS DEFINED AS HILTON HONORS WORLDWIDE, LLC, ITS SUBSIDIARIES, AFFILIATES, ET CETERA.

SO IN THE VERY BEGINNING OF THIS SET OF TERMS, IT TELLS YOU WHO THE PARTIES TO THE CONTRACT ARE.  THERE WERE SOME ARGUMENTS ABOUT WHETHER HILTON WORLDWIDE HOLDINGS IS A SIGNATORY OR A PARTY TO THIS CONTRACT, THEY ABSOLUTELY ARE BECAUSE HILTON HONORS IS DEFINED TO INCLUDE ITS AFFILIATES.

AND THEN AS YOU CONTINUE DOWN THROUGH THOSE PARAGRAPHS, IT TALKS ABOUT THE VARIOUS AGREEMENTS THAT YOU MAKE, INCLUDING THE AGREEMENT TO BRING ALL SUITS IN THE EASTERN DISTRICT OF VIRGINIA BECAUSE HILTON WORLDWIDE HOLDINGS IS AN AFFILIATE OF

HILTON HONORS AND EXPRESSLY DEFINED AS A PARTY HERE, THE VENUE PROVISION IS BINDING ON THEM AS WELL.

THE COURT:  OKAY.  I WAS ACTUALLY DISCUSSING SOME OF THE TERMS OF THE PREAMBLES AND CONDITIONS, BUT IT'S FINE.

THEN THERE WAS SOMETHING ELSE WHICH COUNSEL WANTED TO RAISE WITH THE COURT?

MS. ORD:  YES.  I JUST WANTED TO CLARIFY YOU SAID IF YOU INSTRUCTED US TO PROVIDE ADDITIONAL INFORMATION, IT WOULD BE ABOUT THE FEES AND COSTS FOR THE HEARING ON THE SECOND DISMISSAL MOTION.  DID YOU WANT US TO INCLUDE THE BRIEFING AND WORK THAT WENT INTO LEADING UP TO THE HEARING OR JUST THE COSTS FOR THE HEARING?

THE COURT:  HERE'S WHAT I'M GOING TO PROPOSE TO THE PARTIES -- TO COUNSEL.

COUNSEL CAN YOU REPEAT YOUR LAST NAME?  I'M NOT SURE I'M PRONOUNCING IT CORRECTLY.

MR. PATEK:  PATEK.

THE COURT:  PATEK?

MR. PATEK:  YES.

THE COURT:  ALL RIGHT.  THANK YOU, MR. PATEK.

GIVEN THE STATEMENTS THAT ARE MADE, HERE IS THE PROPOSAL I HAVE AND I'M WONDERING IF THE PARTIES WOULD BE WILLING TO STIPULATE TO THIS, OR IF YOU COULD MEET AND CONFER TO A SEPARATE NUMBER, BUT THE PROPOSAL WHICH I WOULD SUGGEST IN TERMS OF THE AMOUNT OF SANCTIONS, LOOKING AT THE ECF 54-1, I

BELIEVE IT'S THE BILLING -- IT'S THE FILING, THE ORIGINAL FILING OF THIS.  IT'S EXHIBIT 1, SO 54-1, EXHIBIT 1 TO HILTON'S NOTICE OF MOTION AND MOTION.

IF YOU TURN TO THE BILLING STATEMENTS WHICH I HAD REFERENCED WHICH WERE ECF PAGE NUMBER BEGINNING AT 115, IT SEEMS TO ME THAT IN TERMS OF THAT RESEARCH AND FIGURING OUT THE INFORMATION REGARDING THE HILTON HONORS MEMBERSHIP, I'M LOOKING AT THE ENTRIES FROM 8/27 THROUGH 9/9, THAT TOTALS APPROXIMATELY -- IT'S $7,966, I BELIEVE, BASICALLY $8,000.  AND THE PROPOSAL WHICH I WAS SAYING IN TERMS OF POSSIBLY STIPULATING, A POSSIBLE STIPULATION WOULD BE THAT PLUS THE COST OF PREPARATION AND THE HEARING ON THE SECOND MOTION TO DISMISS, WHICH MY GUESS WOULD BE A COUPLE THOUSAND, I'M NOT SURE. MS. ORD, YOU PROBABLY HAVE A BETTER SENSE.

BECAUSE TO ME, IN TERMS OF THE -- SOME OF THIS OVERLAPS, SOME OF IT DOESN'T, IT IS DISCOUNTING, I RECOGNIZE, TO SOME DEGREE, BUT ALSO I THINK SERVES ITS PURPOSE, WOULD BE WHETHER OR NOT PARTIES COULD STIPULATE TO APPROXIMATELY $10,000 OR COUNSEL COULD.

MS. ORD:  I WOULD NEED TO CHECK WITH MY CLIENT TO GET THEIR APPROVAL BUT WE CAN DO THAT AND THEN MEET AND CONFER FURTHER AND REPORT BACK TO YOUR HONOR.

THE COURT:  OKAY.

SO -- AND I THINK I HEARD, MR. PATEK, THAT YOU AGREED?

MR. PATEK:  YES, YOUR HONOR.  I JUST WANTED TO SAY I

THINK WE WOULD BE WILLING TO STIPULATE TO THAT.

THE COURT:  SO WHY DON'T BOTH OF YOU DISCUSS, MS. ORD, WHY DON'T YOU SPEAK TO YOUR CLIENT AND THEN MEET AND CONFER, AS COUNSEL HAS SUGGESTED, AND FILE A STIPULATION IF YOU AGREE, IF PARTIES ARE IN AGREEMENT.  AND IF NOT, MS. ORD, I WOULD SAY JUST GO AHEAD AND SEND IN THE HEARING, SEND IN FOR NOW THE HEARING PREPARATION AND THE HEARING NUMBERS.

MS. ORD:  OKAY.

THE COURT:  AND I WILL LET YOU KNOW IF I NEED ANYTHING FURTHER BY DOCKET ENTRY.

MS. ORD:  OKAY.  THANK YOU.

SHOULD WE PLAN TO DO THAT BY DECEMBER 3RD?  DOES THAT WORK FOR YOUR HONOR?

THE COURT:  YES.  WHY DON'T YOU MEET AND CONFER BECAUSE I KNOW IT TAKES TIME TO COMPILE THIS STUFF, SO WHY DON'T YOU MEET AND CONFER FIRST BECAUSE IF YOU REACH A RESOLUTION THEN YOU NECESSARILY DON'T NEED TO FILE.

MS. ORD:  OKAY.

THE COURT:  SO WHY DON'T PARTIES MEET AND CONFER AND LET THE COURT KNOW WHETHER OR NOT THERE IS A STIPULATION WHICH CAN BE REACHED AS TO THE AMOUNT BY NOVEMBER 26TH, SO BEFORE THANKSGIVING.

MS. ORD:  OKAY.

THE COURT:  AND THEN IF NOT THEN, MS. ORD, FILE EVERYTHING THAT I'M REQUESTING BY DECEMBER 3RD.

MS. ORD:  OKAY.

THE COURT:  SO THAT'S THE MOTION FOR SANCTIONS.

AND I THINK WE HAVE EXHAUSTED ARGUMENT REGARDING THE MOTION TO TRANSFER, UNLESS THERE'S SOMETHING FURTHER THAT EITHER SIDE HAS.

MS. ORD:  NOT FROM HILTON.

MR. PATEK:  NOTHING MORE FROM PLAINTIFFS, YOUR HONOR.

THE COURT:  OKAY.  LET ME JUST CHECK ONE LAST THING IN TERMS OF MY NOTES.

ALL RIGHT.  THAT IS IT FOR MY NOTES.  EVERYBODY TAKE CARE, AND HAVE A SAFE HOLIDAY.

MS. ORD:  YOU TOO.  THANK YOU, YOUR HONOR.

MR. PATEK:  THANK YOU, YOUR HONOR.

(WHEREUPON THE PROCEEDINGS WERE CONCLUDED AT 11:48 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

DATED:  NOVEMBER 23, 2025

UNITED STATES COURT REPORTERS